In the Matter of PLAZA MANAGEMENT Co., on Behalf of Itself and All Other Property Owners Similarly Situated, Appellant-Respondent, v CITY RENT AGENCY, Respondent-Appellant. (Appeal No. 1.)

In the Matter of PLAZA MANAGEMENT Co., as Owner of Premises 205 East 78th Street, Respondent, v DEPARTMENT OF RENT AND HOUSING MAINTENANCE, Appellant. (Appeal No. 2)

First Department, May 20, 1975

*Robert S. Fougner* of counsel *(McLaughlin & Fougner,* attorneys), for appellant-respondent and respondent.

*Stephen H. Deutschmeister* of counsel *(Harry Michelson,* attorney), for respondent-appellant and appellant.

*Per Curiam.* The court is unanimous in its conclusion that class action status should be afforded to the proceeding attacking the policy adopted by the city rent agency. The court is divided on the issue of whether the commissioner's determination has a rational basis.

The total number of rooms contained in a residential structure has a direct bearing on the gross maximum base rent (MBR) applicable thereto. The legislation creating the MBR program for rent controlled housing fails to define the term "room". The rent commissioner, when faced with the recurring problem of distinguishing kitchens from kitchenettes for room- count purposes, adopted a rule of construction excluding cooking areas with less than 59 square feet of floor space from consideration for MBR room count credit. The commissioner sought to provide such uniform objective line of demarcation by reference to relevant existing statutory standards which use square foot space criteria to distinguish between kitchens and kitchenettes. For instance, subdivision 25 of section D-26.107 of the New York City Administrative Code defines "kitchen" as a "room used for cooking with 59 square feet or more of floor area" and subdivision 26 defines "kitchenette" as "space used for cooking with less than 59 square feet of floor area".

Similarly, subdivision 18 of section 4 of the State Multiple Dwelling Law provides in part as follows: "Cooking spaces less than fifty-nine square feet in area * * * shall not be deemed living rooms". And subdivision 1 of section 33 of that law states as follows: "Every space which is intended, arranged or designed for cooking or warming of food shall be either a kitchen or kitchenette. The term 'kitchen' shall mean such a space fifty-nine square feet or more in floor area. The term 'kitchenette' shall mean such a space which is less than fifty-nine square feet in floor area".

In view of the sections above quoted, it is obvious that the

commissioner acted in good faith when he embraced the very definitions of a kitchen which the State and city, through their legislative bodies, had promulgated on earlier occasions. Having adopted the very definitions provided by law, the manner of their application and construction was for the commissioner. It is settled that such determination is to be afforded controlling weight. *(Udall v Tallman,* 380 US 1, 16; *Romanow v City Rent and Rehabilitation Administration,* 31 AD2d 899, 900.)

"Of course, statutory construction is the function of the courts 'but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited' *(Board v Hearst Publications,* 322 US 111, 131). The administrative determination is to be accepted by the courts 'if it has "warrant in the record" and a reasonable basis in law' (same citation.) 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body' *(Rochester Tel. Corp. v U. S.,* 307 US 125, 146)." *(Matter of Mounting and Finishing Co. v McGoldrick,* 294 NY 104, 108.)

Petitioner has failed to demonstrate that the commissioner's determination was without rational basis or warrant in the record or that it was arbitrary or capricious. Whether or not we (or Special Term) would have acted differently or defined the broad terms involved in a different manner, is of no moment.

Special Term improperly treated the action of the commissioner as a change in rule or regulation requiring the State commissioner's approval. Here, the city rent agency did not promulgate a rule or regulation aimed at more stringent or restrictive regulation and control of controlled housing accommodations (Local Emergency Housing Rent Control Act, § 5; L 1962, ch 21, as amd), but, rather, merely interpreted a pre-existing definition distinguishing between kitchens and kitchenettes.

The judgment of the Supreme Court, New York County, entered in this article 78 proceeding on January 7, 1975 (SPECTOR, J.), invalidating the determination of the city rent agency, which adopted a policy excluding kitchens and kitchenettes with a floor area of less than 59 square feet from the "room count", for purposes of calculating a residential structure's gross maximum base rent, and the judgment of the

Supreme Court, New York County, entered on January 9, 1975 (SPECTOR, J.), vacating a determination of the city rent agency reducing a landlord's MBR in accordance with such "policy", should be reversed, on the law, and the petitions dismissed, without costs.

KUPFERMAN, J. (dissenting). While I concur in the conclusion that class action status is proper (but cf. *Matter of Rivera v Trimarco,* 36 NY2d 747), I would affirm the determination at Special Term that a 59-square foot room rule is arbitrary and unreasonable. To require that a kitchen to be considered a room must have at least 59 square feet of space, ignores the realities of modern day living where intelligent layout can create a compact "room" of greater value and utility in less space. Any such exclusionary rule should have a more rational relationship to the purpose to be served. (Cf. *Matter of Sontag v Bronstein,* 33 NY2d 197.)

STEVENS, P. J., MURPHY and CAPOZZOLI, JJ., concur in *Per Curiam* opinion; KUPFERMAN and TILZER, JJ., dissent in part in an opinion by KUPFERMAN, J.

Judgments, Supreme Court, New York County, entered on January 7, 1975 (Appeal No. 1), and January 9, 1975 (Appeal No. 2), reversed, on the law, and vacated, and the petitions dismissed, without costs and without disbursements.